STATE OF NORTH CAROLINA v. DARRELL WILLIAMS

No. 551A87

(Filed 2 June 1988)

**Criminal Law § 89.4— defense witness—no impeachment by use of extrinsic evidence of prior inconsistent statements**

Where one of defendant's witnesses denied that defendant had told him that he raped the victim, and the witness denied that he had told his probation officer and an employee of the officer that defendant told him he had raped the victim, the trial court erred in allowing the State to call the probation officer and the employee to testify that the witness had told them of defendant's statement, since the State may not impeach a defense witness by use of extrinsic evidence of prior inconsistent statements; furthermore, where the question of defendant's guilt hinged solely upon whether the jury believed his or the prosecutrix's testimony, there was a reasonable possibility of a different result had the evidence not been erroneously admitted.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a life sentence entered by *Herring, J.,* at the 22 June 1987 Criminal Session of Superior Court, WARREN County, upon defendant's conviction of first degree rape. Heard in the Supreme Court 14 April 1988.

*Lacy H. Thornburg, Attorney General, by John R. Corne, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant appellant.*

EXUM, Chief Justice.

The issue on appeal is whether the trial court erred in allowing the state to impeach one of defendant's witnesses, David Small, by use of extrinsic evidence of prior inconsistent statements. We conclude admission of the impeachment testimony constitutes reversible error.

I

At trial, the nineteen-year-old prosecutrix testified that on the evening of 28 December 1986 she went to the Starlight Palace Club with Mary Small, David Small, Lennie Alston and defendant. She later left the club with defendant and Alston. As the three

State v. Williams

drove home, defendant "took a short cut," stopped the car and told the victim that she would have to "give him something." Defendant then continued driving. About fifteen minutes later defendant again stopped the car. The victim testified that, while Lennie Alston held her down, defendant got on top of her and used the weight of his body to pin her hands down so that she could not move. Defendant then took off her pantyhose and panties and, after several attempts, inserted his penis in her vagina. After having sexual intercourse with her, defendant took her home.

Defendant testified on his own behalf. He admitted leaving the Starlight Palace Club with the victim and Lennie Alston. However, he testified that he took the victim directly to her house and denied ever having sexual intercourse with her.

Defendant's sister, Mary Small, testifying on defendant's behalf, said the victim had flirted with defendant and had insisted on leaving the Starlight Palace Club with him. She also testified the victim had called and told her she had been raped.

Robert Small, defendant's brother-in-law, also testified on defendant's behalf. Robert Small corroborated his wife Mary's testimony and stated the victim had also flirted with him on 28 December. On cross-examination Small admitted he was on probation for driving under the influence. The following exchange then occurred:

Q. And isn't it true that [defendant] told you that he did have sex with her that evening?

A. He ain't never told me that. He ain't never told me that. . . .

Q. And isn't it true that you have discussed this matter with your probation officer, Robert Terry? . . . .

A. No . . . .

Q. You deny that you were in Robert Terry's office on this day and that you told him that . . . Darrell Williams told you that he had in fact had sex with [victim]?

A. I deny it all. I didn't tell. I didn't tell my probation officer that.

Following this testimony the state called two rebuttal witnesses in an attempt to impeach Small's testimony. The state first called Robert Terry, Small's probation officer, and proposed to ask him whether Small had told him that defendant had admitted raping the victim. Over objection, Robert Terry testified as follows:

Q. . . . . Did he specifically at any time tell you whether or not his brother-in-law had told him what had gone on between he and [victim]?

A. Yes. . . . He stated that the conversation that he had with Darrell Williams, his brother-in-law, was that his brother-in-law told him the whole detail of what happened, and that he did rape. [sic] And so I didn't ask him for any details, because I didn't want to hear any more.

Following the testimony of Robert Terry, the state called a second rebuttal witness, Monique Mills. Ms. Mills, a summer employee of Robert Terry, had been present in the room at the time of the alleged conversation between David Small and Robert Terry. Before allowing Ms. Mills to testify the trial court instructed the jury as follows:

All right. Members of the jury, the testimony of Mr. Terry and of this witness [Ms. Mills] is offered by the State solely for the purpose of impeaching the truthfulness and credibility of the testimony of the defendant's witness [David Small].

Over objection, Ms. Mills testified as follows:

Q. Were you in [Robert Terry's] office this afternoon when Mr. Small came in to the office?

A. Yes.

Q. What, if anything, did you hear Mr. Small say?

. . . .

A. . . . He said he [defendant] told him about that night. . . . he said that Darrell told him about that night and that it did happen, or something like that. . . .

II

Defendant argues, and we agree, that it was error for the trial court to allow the state to use extrinsic evidence of prior in-

consistent statements, *i.e.*, the testimony of Robert Terry and Monique Mills, to impeach David Small.

As we stated in *State v. Green*, 296 N.C. 183, 250 S.E. 2d 197 (1978):

> A witness may be cross-examined by confronting him with prior statements inconsistent with any part of his testimony, but where such questions concern matters collateral to the issues, the witness's answers on cross-examination are conclusive, and the party who draws out such answers will not be permitted to contradict them by other testimony.

*Id.* at 192, 250 S.E. 2d at 203. For a general understanding of this rather complex area of evidence law, see 1 Brandis on North Carolina Evidence § 48 (2d rev. ed. 1982), and cases therein cited and discussed.

In *State v. Moore*, 275 N.C. 198, 166 S.E. 2d 652 (1969), defendant was tried and convicted of the first degree murder of his wife. Defendant's brother, Ray Moore, testified on defendant's behalf. Ray Moore denied on cross-examination that defendant had admitted to him that he [defendant] had shot the victim. Thereafter, over defendant's objection, Sheriff E. O. Davis was permitted to testify that Ray Moore had told him that defendant had admitted shooting the victim. We concluded that, when Ray Moore denied that defendant had made the disputed statement to him, the state was bound by Moore's answer because his "denial did not tend to establish any material fact in the case; it was negative testimony which proved nothing. . . ." We held that, because Ray Moore's testimony concerned a collateral matter, the trial court erred in permitting the state to impeach him by use of extrinsic evidence.

In *State v. Cutshall*, 278 N.C. 334, 180 S.E. 2d 745 (1971), defendant's son, Dewayne Cutshall, denied telling anyone that his father was "down at Riverside making up alibis." Over defendant's objection, Sheriff Roy Roberts and Blanche Cutshall were permitted to testify that they heard Dewayne Cutshall make such a statement. In concluding that the trial court committed reversible error by permitting the testimony, we stated that:

> [W]hen Dewayne Cutshall denied making the collateral statement, the State was bound by his answer and could not offer

extrinsic evidence for the purpose of impeaching the witness as to his prior inconsistent statements. Yet the admission of the incompetent testimony of Blanche Cutshall and Sheriff Roy Roberts contradicting Dewayne's denial gave the State the benefit of evidence which tended to weaken and undermine defendant's sole defense of alibi . . . .

*Id.* at 350, 180 S.E. 2d at 755.

*Moore* and *Cutshall* control the case at bar. Under these holdings Robert Small's testimony concerning what he did or did not tell his probation officer was collateral to the issues in the case; therefore, it was improper to impeach him on this point by offering the testimony of Robert Terry and Monique Mills. Robert Terry's and Monique Mills' testimony was not offered to prove that defendant had, in fact, made the alleged statements to David Small. Rather, the testimony was offered solely to contradict Small's testimony that he had not *told* Robert Terry that defendant made these statements. While the *substance* of those statements and whether defendant made them would be material, whether Robert Small had *told* anyone about defendant's statements is clearly collateral.

We recognize that on 1 July 1984 our current Rules of Evidence, N.C.G.S. § 8C-1, went into effect and governed this trial. While these Rules control almost all evidence questions that arise, "there are some evidentiary questions that are not within the coverage of these rules. In these instances, North Carolina precedents will continue to control unless changed by our courts." N.C.G.S. § 8C-1, Commentary, Rule 102 (1986). Arguably, Rule 403 is designed to render the evidence considered here inadmissible. *See* Dolan, *Rule 403: The Prejudice Rule in Evidence*, 49 So. Cal. L. Rev. 220 (1976). Indeed the Court in *Moore* gave as one reason for excluding the evidence that "the prejudicial effect of such evidence outweighs its legitimate use . . . ." 275 N.C. at 213, 166 S.E. 2d at 662. Since, however, our precedents speak so clearly to the evidence question presented and the Rules speak, if at all, only obliquely, we have no hesitancy in following our precedents to resolve the issue. In either event, the result is the same.

Under N.C.G.S. § 15A-1443(a) (1983), reversible error exists "where there is a reasonable possibility that, had the error in question not been committed, a different result would have been

reached at trial." Here, the statements attributed to defendant constituted an admission that he had, indeed, raped the victim. In light of the sharp conflict in the evidence, with the question of defendant's guilt hinging solely upon whether the jury believed his testimony or the prosecutrix's testimony, we conclude that had this evidence not been erroneously admitted there is a reasonable possibility of a different result at trial. *See State v. Cutshall,* 278 N.C. 334, 180 S.E. 2d 745. Defendant, therefore, must be given a

New trial.