STATE OF NORTH CAROLINA v. THOMAS ALLEN NAJEWICZ

No. 9214SC5

(Filed 19 October 1993)

**1. Evidence and Witnesses § 120 (NCI4th) — cross-examination about previous rape claims — issue not properly presented**

The trial court did not err by failing to allow defendant to cross-examine an alleged rape victim as to whether she had made any previous claims of rape because defendant failed to properly present this issue to the trial court where defendant merely requested to cross-examine the victim concerning "her previous sexual relationships outside of marriage," the trial court conducted an *in camera* hearing pursuant to the Rape Shield Statute, and defendant at no point attempted or requested permission to question the victim concerning

whether she had ever accused anyone other than defendant of rape. N.C.G.S. § 8C-1, Rule 412(b).

**Am Jur 2d, Rape §§ 55 et seq., 86, 87.**

**Impeachment or cross-examination of prosecuting witness in sexual offense trial by showing that prosecuting witness threatened to make similar charges against other persons. 71 ALR4th 448.**

**Modern status of admissibility, in forcible rape prosecution, of complainant's prior sexual acts. 94 ALR3d 257.**

2. **Evidence and Witnesses § 122 (NCI4th)— Rape Shield Statute—in camera hearing—provision of transcript to State**

    The trial court did not err by providing to the State a transcript of defendant's testimony at an *in camera* hearing held pursuant to the Rape Shield Statute. N.C.G.S. § 8C-1, Rule 412(e).

**Am Jur 2d, Rape § 55 et seq.**

3. **Evidence and Witnesses § 3076 (NCI4th)— Rape Shield Statute—in camera hearing testimony—use for impeachment**

    Where the defendant in a rape trial testified on direct examination that the prosecutrix told him of a previous sexual assault several weeks before he engaged in sex with her, the State was properly permitted to impeach defendant by use of his prior inconsistent testimony at an *in camera* hearing under the Rape Shield Statute that the prosecutrix led him to believe she was a virgin until moments before they had intercourse when she revealed she had been raped by a former boyfriend since (1) the Rape Shield Statute may not be utilized as a barrier to prevent cross-examination concerning critical inconsistencies in sworn testimony, and (2) the use of the *in camera* transcript did not constitute impeachment on a collateral matter.

**Am Jur 2d, Witnesses §§ 929 et seq., 941.**

4. **Criminal Law § 541 (NCI4th)— discussion of case by jurors during recess—no denial of fair trial**

    Defendant was not denied a fair trial by the trial court's failure to inquire if the jury had begun deliberations before all the evidence was presented when a juror advised the court

STATE v. NAJEWICZ

[112 N.C. App. 280 (1993)]

shortly after the trial began that some jurors were discussing the case during a recess where the court gave a curative instruction that the jury should remain open-minded and not discuss the case until it formally retired for deliberations, and defendant made no motion for a mistrial or other request for any other court action based upon the alleged juror misconduct.

Am Jur 2d, Trial § 1610.

Propriety and effect of jurors' discussion of evidence among themselves before final submission of criminal case. 21 ALR4th 444.

5. Evidence and Witnesses § 694 (NCI4th) — exclusion of evidence — failure of record to show what testimony would have been

The exclusion of testimony by defendant's supervisor in response to defendant's question seeking her opinion as to whether defendant was "capable of raping anyone" was not presented for appellate review where the record fails to show what the testimony of the witness would have been had she been permitted to answer the question. While the response anticipated by defendant may be inferred, the answer of the witness is not apparent from the context of the question within the purview of N.C.G.S. § 8C-1, Rule 103(a).

Am Jur 2d, Appeal and Error § 604; Trial §§ 440, 443.

Comment Note. — Ruling on offer of proof as error. 89 ALR2d 279.

6. Evidence and Witnesses §§ 2047, 2152 (NCI4th) — lay opinion testimony — capability of rape — perceptions and observations of witness — legal term of art

Opinion testimony by defendant's supervisor as to whether defendant was "capable of raping anyone" was properly excluded because (1) there was no foundation showing that the opinion called for was rationally based upon the perception and observations of the witness, and the word "raping" is a legal term of art not readily apparent to the witness.

Am Jur 2d, Expert and Opinion Evidence §§ 26 et seq.; Rape § 68.

**7.  Criminal Law § 820 (NCI4th) — rape prosecutrix and mother — failure to give "interested witness" instruction**

The trial court did not commit plain error in a rape case by failing to instruct the jury that the prosecutrix and her mother were "interested witnesses" after it had instructed that two defense witnesses were "interested" where defendant made no request for such an instruction. Moreover, the trial court's instruction that, in determining whether to believe any witness, the jury could consider any interest, bias or prejudice the witness may have was sufficient to place before the jury the credibility of the prosecutrix and her mother.

**Am Jur 2d, Trial § 1412.**

Appeal by defendant from judgment entered 29 November 1990 by Judge Anthony M. Brannon in Durham County Superior Court. Heard in the Court of Appeals 9 February 1993.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Henry T. Rosser, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

JOHN, Judge.

Defendant was convicted of one count of first degree rape. He contends the trial court erred by: (1) prohibiting questioning of the prosecuting witness regarding whether she had ever previously claimed to have been raped or sexually harassed; (2) allowing the prosecution to impeach his trial testimony with a transcript of his testimony from an *in camera* hearing conducted pursuant to N.C.R. Evid. 412; (3) failing to make inquiry of the jury as to whether it had prematurely begun deliberations; (4) not allowing a defense witness to answer whether defendant was "capable of raping anyone"; and (5) failing to instruct the jury the prosecuting witness and her mother were "interested witnesses." We determine these contentions fail.

The State's evidence tended to show defendant was manager of an "Ole" Jewelry Store in South Square Mall in Durham. Lara S. (Lara), age twenty, was a part-time employee at the store. Lara testified she and defendant were friends who went together to

lunch and on one occasion, a movie. At some point, defendant began sending her letters and asking her out on dates. She declined these offers and notified "Ole" she was quitting. On the evening of 24 May 1990, defendant informed Lara she did not have to work because he had dinner reservations for them. They departed the mall in her truck and stopped by defendant's apartment. Upon entering the apartment, defendant handed her the following note:

Dearest Lara,

If you don't want to get hurt, don't scream. If you do I will beat and torture you. If you cooperate, you will not get hurt. Do not try to get away, bite, fight, scream or you may end up dead. If we are in the truck you will get out on my side slowly with me, acting like you want to, walk hand in hand with me into the apt. I don't want to have to handcuff you but I will. If you cooperate, you will be safely home before midnight. Unharmed, healthy, a little sad maybe, but you will be safe only if you cooperate. Don't, and you will never see your mother or anyone else again. Now sit down on the floor and I'll explain why I'm doing all this. Some of the things we'll be doing may seem sick or disgusting, but they will save your well being. No crying permitted and you must whisper.

Lara testified she read the note and then started to leave defendant's apartment. She stopped upon seeing him holding a knife. Defendant told her she "wasn't going anywhere and he didn't want to use his knife." She tried to leave one other time, but he told her to "sit back down." In the course of the evening, defendant handed Lara a second note which contained several lists of activities, many of which were sexual in nature. She crumbled this note and threw it back at him. Defendant became enraged and began to make verbal threats. He then told her to get onto the mattress where they subsequently had sexual relations. Lara further testified she did not resist because she believed defendant would kill her. She was finally allowed to leave around 11:30 p.m.

Several other witnesses testified for the State, including Dr. Catherine Lohr Moore, who was the examining physician, and Detective Darryl Dowdy, who was the police investigator assigned to the case. In addition, the State called Lara's mother as a rebuttal witness.

Defendant testified on his own behalf, asserting the sexual intercourse was consensual. According to defendant, the notes were written as a practical joke and as part of the couple's consensual relations during the course of the evening. Defendant's mother and his supervisor at "Ole" also testified on his behalf and stated he was in the habit of pulling practical jokes.

## I.

In his first assignment of error, defendant contends the trial court erred by not allowing him to cross-examine Lara concerning whether she had ever (1) claimed to have been sexually harassed by earlier employers and (2) claimed to have been raped by previous boyfriends. According to defendant, these two lines of questioning were permissible under N.C.R. Evid. 412 (1991), commonly known as the "Rape Shield Statute."

We first note defendant was indeed allowed to question Lara concerning whether she had ever claimed to have been sexually harassed, and accordingly his argument in this regard is without merit.

[1] As to defendant's second assertion concerning any previous claims of rape, we determine he failed to present this issue properly to the trial court.

Under our Rape Shield Statute, the *sexual behavior* of the prosecuting witness is irrelevant unless the behavior is as follows:

(1) Was between the complainant and the defendant; or

(2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant; or

(3) Is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented; or

(4) Is evidence of sexual behavior offered as the basis of expert psychological or psychiatric opinion that the complainant fantasized or invented the act or acts charged.

Rule 412(b).

At trial defendant merely requested to cross-examine the prosecuting witness concerning "her previous sexual relationships outside of marriage." After this request, the trial court conducted an *in camera* hearing as required by Rule 412(d). However, defendant at no point attempted to question Lara *concerning whether she had ever accused someone other than defendant of rape*; in fact he never even requested permission to conduct such an examination. We further note defendant made no reference to any of the four relevant categories of inquiry as per Rule 412(b). A contention which is not made at trial cannot be raised for the first time on appeal. *Plemmer v. Matthewson*, 281 N.C. 722, 725, 190 S.E.2d 204, 206 (1972).

## II.

In his next assignment of error, defendant alleges the trial court erred by (1) providing the State with a transcript of defendant's testimony from the N.C.R. Evid. 412 *in camera* hearing and (2) allowing the State to impeach defendant with his testimony from this hearing.

During the *in camera* hearing, defendant testified Lara led him to believe she was a virgin until moments before they had intercourse when she revealed she had been raped by a former boyfriend. Later, *on direct examination* and in the presence of the jury, defendant testified concerning the contents of a letter he had written more than two weeks before the incident in question. According to this letter, Lara had informed defendant of the earlier rape *long before* the night on which the intercourse occurred. Thereafter, *on cross-examination*, the State used the transcript from the *in camera* hearing to question defendant as to how he could believe Lara was a virgin on that night since she had previously told him she had been raped. According to defendant, this cross-examination violated both Rule 412(e) and the mandate holding a witness may not be impeached on a collateral matter by use of extrinsic evidence. We find defendant's arguments unpersuasive.

## A.

[2] North Carolina's Rape Shield Statute provides explicit instruction regarding the extent to which testimony from a Rule 412 *in camera* hearing may be used:

> *The record of the in camera hearing and all evidence relating thereto shall be open to inspection only by the parties, the*

*complainant, their attorneys and the court and its agents, and shall be used only as necessary for appellate review.* At any probable cause hearing, the judge shall take cognizance of the evidence, if admissible, at the end of the *in camera* hearing without the questions being repeated or the evidence being resubmitted in open court.

Rule 412(e) (emphasis added). Defendant argues the State's cross-examination breached Rule 412(e) in two regards.

Defendant's *first* claim, that the State should not have been provided with a transcript of the *in camera* hearing, is unfounded. Rule 412(e) expressly provides "[t]he record of the *in camera* hearing . . . shall be open to inspection . . . by the parties . . . ."

[3] Regarding defendant's *second* assertion concerning use of the transcript for impeachment purposes, we observe the General Assembly enacted the Rape Shield Statute to protect the privacy of the *prosecutrix*, not the accused. *See State v. Clontz*, 305 N.C. 116, 122-23, 286 S.E.2d 793, 796-97 (1982) (construing former N.C.G.S. § 58.6). "This statute was designed to protect the [prosecuting] witness from unnecessary humiliation and embarrassment while shielding the jury from unwanted prejudice that might result from evidence of sexual conduct which has little relevance to the case and has a low probative value." *State v. Younger*, 306 N.C. 692, 696, 295 S.E.2d 453, 456 (1982). However, even as regards the prosecuting witness, this Rule does not bar certain prior inconsistent statements.

In *State v. Younger*, the prosecutrix testified *at the preliminary hearing* she engaged in sexual intercourse with defendant's roommate on the night of the alleged rape. *Younger*, 306 N.C. at 695, 295 S.E.2d at 455. However, *only hours after the alleged incident*, she had told the examining physician it had been one month since she last had sex. *Id.* at 695-97, 295 S.E.2d at 455-56. In *Younger*, as in the case *sub judice*, the question of *consent* was focal. Due to the crucial nature of the prosecutrix' credibility, denial of the opportunity to impeach her concerning this prior inconsistent statement was held prejudicial error: "[i]t is our belief that the statute was not designed to shield the prosecutrix from the effects of her own inconsistent statements which cast a grave doubt on the credibility of her story." *Younger*, 306 N.C. at 697, 295 S.E.2d at 456. The Court further observed "the statute was not intended to act as a barricade against evidence which is used to prove

issues common to all trials. Inconsistent statements are, without a doubt, an issue common to all trials." *Id.* at 697, 295 S.E.2d at 456; *see also State v. Johnson*, 66 N.C. App. 444, 446, 311 S.E.2d 50, 51-52, *disc. review denied*, 310 N.C. 747, 315 S.E.2d 707 (1984).

Thus, contrary to defendant's position, Rule 412 may not be utilized as a barrier to prevent cross-examination concerning critical inconsistencies in sworn testimony. Under authority of *Younger*, therefore, the prosecution was properly permitted to cross-examine defendant concerning his prior inconsistent statements made at the *in camera* hearing.

**B.**

We are also unconvinced by defendant's claim the prosecution's questions concerned a collateral matter and thus defendant was improperly impeached by use of extrinsic evidence, *i.e.*, the transcript from the *in camera* hearing.

In *State v. Williams*, 322 N.C. 452, 368 S.E.2d 624 (1988), our Supreme Court set out the basic principles of this rather complex area of evidence:

A witness may be cross-examined by confronting him with prior statements inconsistent with any part of his testimony, but where such questions concern matters collateral to the issues, the witness's answers on cross-examination are conclusive, and the party who draws out such answers will not be permitted to contradict them by other testimony.

*Id.* at 455, 368 S.E.2d at 626 (quoting *State v. Green*, 296 N.C. 183, 192, 250 S.E.2d 197, 203 (1978)).

Under *Williams*, it is clear a prior inconsistent statement may not be used to impeach a witness if the questions concern matters which are only collateral to the central issues. *Accord State v. Hunt*, 324 N.C. 343, 348, 378 S.E.2d 754, 757 (1989). In *Williams*, a rape prosecution, defendant's brother-in-law testified on his behalf. When asked whether he had told his probation officer defendant had admitted having sex with the prosecutrix, the witness responded in the negative. *Williams*, 322 N.C. at 453, 368 S.E.2d at 625. The State thereafter called the brother-in-law's probation officer who testified concerning the statement allegedly made by the witness. *Id.* at 454, 368 S.E.2d at 625. Our Supreme Court ordered a new trial, stating:

STATE v. NAJEWICZ

[112 N.C. App. 280 (1993)]

[T]estimony concerning what [the brother-in-law] did or did not tell his probation officer was collateral to the issues in the case; therefore, it was improper to impeach him on this point by offering [extrinsic evidence] .... [The extrinsic evidence] was not offered to prove that defendant had, in fact, made the alleged statements ... [but] was offered solely to contradict [the brother-in-law's] testimony that he had not *told* [his probation officer] that defendant made these statements. While the *substance* of those statements and whether defendant made them would be material, whether [the brother-in-law] had *told* anyone about defendant's statements is clearly collateral.

*Id.* at 456, 368 S.E.2d at 626.

Frequently, it is unclear what is "collateral" and what is "material." However, as a general rule, "collateral matters" are those which are irrelevant to the issues in the case; they involve immaterial matters and irrelevant facts inquired about to test observation and memory. 1 H. Brandis, *Brandis on North Carolina Evidence* § 48, at 227-28 (1988). Recently, in summarizing North Carolina law dealing with impeachment on collateral matters, this Court observed once a witness *denies* having made a prior inconsistent statement, the State may not introduce the prior statement in an attempt to discredit the witness; the prior statement concerns only a *collateral matter, i.e.,* whether the statement was ever made. *State v. Minter,* 111 N.C. App. 40, 48, 432 S.E.2d 146, 151 (1993).

In the case *sub judice,* we note defendant *never denied* having made his earlier *in camera* statements and therefore *Minter* is inapplicable. Furthermore, the State's use of the *in camera* transcript did not constitute impeachment on a collateral matter. The State utilized the transcript to impeach defendant's version of the circumstances surrounding the sexual relations between Lara and himself. On *direct examination,* defendant asserted Lara told him of a previous sexual assault several weeks before consensual intercourse, while at the earlier *in camera* hearing he testified she had revealed this only moments before. In resolving the critical issue of consent at defendant's trial, the jury of necessity compared and evaluated the relative credibility of both Lara and defendant. Conflicts between defendant's past and present accounts of the incident in question and the events leading up to it were highly material to the basic issue in the case, and we are thus unable to say the impeachment concerned a "collateral" matter.

Based on the foregoing, therefore, we hold the trial court committed no error, under either of defendant's theories, by allowing the cross-examination of defendant regarding his earlier testimony.

## III.

[4] Defendant next maintains he was deprived of a fair trial when the trial court failed to inquire if the jury had begun deliberations before all the evidence was presented. We conclude defendant's argument cannot be sustained.

Shortly after the trial began, a juror approached the court and advised some other jurors were discussing the case during recess. These alleged discussions were in violation of both the trial court's previous instructions and applicable North Carolina law. *See State v. Drake*, 31 N.C. App. 187, 190, 229 S.E.2d 51, 53 (1976). Out of the presence of the jury, the trial court subsequently solicited suggestions from counsel and defendant's attorney stood mute. Before next exiting the courtroom, the jury was given a curative instruction, which provided in essence the jury was to remain open-minded and not discuss the case until they formally retired for deliberations.

Defendant relies heavily upon *State v. Bindyke*, 288 N.C. 608, 220 S.E.2d 521 (1975), in claiming the court erred by not examining the jury concerning the alleged discussions. In *Bindyke*, an alternate juror was present in the jury room after the jury had formally adjourned for deliberations. Although defendant never objected at trial, our Supreme Court held "at any time an alternate is in the jury room *during deliberations* he participates by his presence and, whether he says little or nothing, his presence will void the trial." *Id.* at 627-28, 220 S.E.2d at 533 (emphasis in original). This rule is mandated since our state constitution contemplates a jury "of twelve persons who reach their decision in the privacy and confidentiality of the jury room." *Id.* at 623, 220 S.E.2d at 531. However, a mistrial may not be necessary if the alternate is only momentarily present in the jury room and deliberations have not yet begun. If the trial court feels this is the case, it may ask the jury in open court "whether there [has] been *any* discussion of the case." *Id.* at 629, 220 S.E.2d at 534. A mistrial is required *only* where the jury's answer is "yes." *Id.* at 629-30, 220 S.E.2d at 534-35.

STATE v. NAJEWICZ

[112 N.C. App. 280 (1993)]

We consider *Bindyke* inapposite. "At the heart of the Court's holding in *Bindyke* was the appearance of impropriety during the *deliberations* of the jury." *State v. Kennedy,* 320 N.C. 20, 30, 357 S.E.2d 359, 365 (1987). Here the alleged impropriety did not occur during formal deliberations, but rather very early in the presentation of the State's case. In fact, only Lara had testified and was just beginning to describe the events of the evening in question.

In *State v. Drake,* 31 N.C. App. 187, 229 S.E.2d 51 (1976), decided after *Bindyke,* this Court was confronted with a situation nearly identical to the present case: "alleged discussions solely among jurors before the time for deliberation in the jury room." *Id.* at 191, 229 S.E.2d at 54. There, we noted such discussions violate established legal principles, but do not necessarily vitiate the verdict. *Id.* at 192, 229 S.E.2d at 55. However, a new trial was dictated in *Drake* because the trial court denied defendant's timely motion for mistrial "without [first] determining the truth about the alleged misconduct and, if true, the effect . . . upon [the] jurors." *Id.* at 192, 229 S.E.2d at 55.

Where juror misconduct *is alleged,* therefore, the trial court must investigate the matter and make appropriate inquiry. Unlike *Drake* however, defendant, although given ample opportunity by the trial court, made no motion for mistrial or request for other court action based upon the alleged juror misconduct. We further note the scope of appellate review in this matter is limited; the trial court will be reversed only if there was an abuse of discretion. *State v. Childers,* 80 N.C. App. 236, 244-45, 341 S.E.2d 760, 765-66, *disc. review denied,* 317 N.C. 337, 346 S.E.2d 142 (1986). However, it is unnecessary for us to determine whether an abuse of discretion occurred since defendant *never questioned the jury's behavior at trial.* Under these circumstances, defendant has waived his right to assign error on appeal. N.C.R. App. P. 10; *see also* 66 C.J.S. *New Trial* § 62 (1950). In any event, it is unlikely defendant suffered any prejudice as a result of the alleged jury misconduct. The alleged discussions were reported early in the trial when the jury had heard only a small portion of the evidence, and the trial court gave a lengthy curative instruction prior to the next recess.

### IV.

[5] Defendant next contends the trial court erred by not allowing Ms. Veola Stephenson, defendant's supervisor at "Ole," to answer the following question on direct examination:

> In your opinion, with your knowledge of Mr. Najewicz, do you believe he's capable of raping anyone?

According to defendant, this question and the answer thereto should have been allowed as evidence of a *pertinent character trait* under N.C.R. Evid. 404(a)(1). We disagree.

Preliminarily, we observe the record reflects defendant made no proffer of Ms. Stephenson's response. He has thus failed to demonstrate the *content* of the evidence he contends was erroneously excluded, and has failed to preserve this issue for appellate review. N.C.R. Evid. 103(a) mandates:

> Error may not be predicated upon a ruling which . . . excludes evidence unless . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

As our Supreme Court has stated, "[i]t is well established that an exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness' testimony would have been had he been permitted to testify." *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985). Defendant argues in his brief, however, "the context of the question makes it obvious what the answer would have been" and therefore no proffer was required. While we may well *infer* what response defendant *anticipated* as opposed to what the witness may *actually* have given, defendant's contention cannot be sustained. Considering a similar situation, the Court in *State v. Satterfield*, 300 N.C. 621, 268 S.E.2d 510 (1980) declined to review the trial court's action in sustaining the prosecutor's objection to defendant's question of a barber as to whether defendant's facial hair growth was fast or slow:

> [I]t is impossible on appellate review to determine whether exclusion of this testimony was prejudicial error. 'A showing of the essential content or substance of the witness's testimony is required before this Court can determine whether the error in excluding evidence is prejudicial.' Otherwise stated, '[w]hen evidence is excluded, the record must sufficiently show what the purport of the evidence would have been, or the propriety of the exclusion will not be reviewed on appeal.'

*Id.* at 628, 268 S.E.2d at 515-16 (citations omitted).

[6] Additionally, assuming *arguendo* the response of the witness would have been "no" rather than in the affirmative or, as is more

likely, equivocal, other compelling reasons exist for upholding the ruling of the trial court.

*First,* while a lay witness may testify in the form of an opinion which embraces an ultimate issue to be decided by the jury, N.C.R. Evid. 704; *Mobley v. Hill,* 80 N.C. App. 79, 86, 341 S.E.2d 46, 50 (1986) (incorrectly stated in S.E.2d), a lay opinion must be both (1) rationally based upon the witness' perception and (2) helpful to a clear understanding of the witness' testimony. N.C.R. Evid. 701. In the present case, there is no foundation showing the opinion called for was rationally based upon the perception and observations of the witness, defendant's supervisor. Further, assuming *arguendo* such an opinion would properly be the subject of expert testimony, there is no indication Ms. Stephenson was qualified to testify on such matters as an expert. *See Matheson v. City of Asheville,* 102 N.C. App. 156, 173-74, 402 S.E.2d 140, 150 (1991); *State v. Bowman,* 84 N.C. App. 238, 243-44, 352 S.E.2d 437, 440 (1987).

*Second,* while opinion testimony may embrace an ultimate issue, the opinion *may not* be phrased using a legal term of art carrying a specific legal meaning not readily apparent to the witness. *State v. Rose,* 327 N.C. 599, 602-04, 398 S.E.2d 314, 315-17 (1990) (expert may not testify defendant was "capable of premeditating"). "Rape" is a legal term of art and accordingly Ms. Stephenson's opinion testimony concerning whether defendant was "capable of rape" was properly excluded. *See State v. Smith,* 315 N.C. 76, 100, 337 S.E.2d 833, 849 (1985).

Based on the foregoing, therefore, we hold the trial court committed no error in sustaining the prosecutor's objection to defendant's opinion question of Ms. Stephenson. In view of this holding, we decline to address the more fundamental question of whether defendant's "capability of rape" even constitutes a "pertinent trait of character" under Rule 404(a)(1).

## V.

[7] In his final assignment of error, defendant claims the trial court committed *plain error* by failing to charge the jury the prosecuting witness and her mother were "interested witnesses." Defendant insists the court was required to do so, even without request, since it had instructed two of defendant's witnesses (defendant and his mother) were "interested." This argument is baseless.

Initially, defendant submitted no request for a special jury instruction to the effect the aforementioned state's witnesses were "interested." In most instances, N.C.R. App. P. 10(b)(2) precludes a party from assigning error to an unobjected-to omitted jury instruction. *State v. Morgan*, 315 N.C. 626, 644, 340 S.E.2d 84, 95 (1986). However, the "plain error" rule allows for appellate review of *some* assignments of error normally barred by operation of Rule 10(b)(2). *Id.* at 644-45, 340 S.E.2d at 96; N.C.R. App. P. 10(c)(4). Our Supreme Court has explained the plain error rule as follows:

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "'resulted in a miscarriage of justice or in the denial to appellant of a fair trial'" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L.Ed.2d 513 (1982) ). In essence, in order to prevail under the plain error rule, defendant must convince this Court that (1) there was error and (2) without this error, the jury would probably have reached a different verdict. *State v. Faison*, 330 N.C. 347, 361, 411 S.E.2d 143, 151 (1991); *State v. Rathbone*, 78 N.C. App. 58, 65, 336 S.E.2d 702, 706 (1985), *disc. review denied*, 316 N.C. 200, 341 S.E.2d 582 (1986).

In the instant case, defendant has failed to show even ordinary prejudicial error, much less "plain error." "[I]nstructions on the credibility of interested witnesses concern a subordinate feature of the case; thus, the court need not instruct on this subject absent a request." *State v. Watson*, 294 N.C. 159, 168, 240 S.E.2d 440, 446 (1978). The court may charge on the status of both defendant and his relatives as interested witnesses without being required to give a similar instruction, without request, as to State's witnesses who may be "interested." *Id.; State v. Eakins*, 292 N.C. 445, 449,

233 S.E.2d 387, 389 (1977) ("[w]e do not believe that the requirement that a defendant must request the desired instruction places an unconscionable burden upon him").

Our conclusion is strengthened by the fact the jury received the following instruction in the case *sub judice*:

> In determining whether to believe *any* witness, you should apply the very same test of truthfulness which you apply in your own ordinary everyday affairs. As applied to this trial, these tests may include . . . [a]ny *interest, bias or prejudice* the witness may have.

(emphasis added). We believe this was sufficient to place the credibility of both the prosecuting witness and her mother before the jury.

No error.

Judges JOHNSON and LEWIS concur.