STATE OF NORTH CAROLINA v. DAVID REED·WILSON

No. COA08-782

(Filed 19 May 2009)

**1. Evidence— recorded statement of witness—not an admissible record**

   The trial court did not err in a murder prosecution by excluding a tape recorded statement given to police from the person with whom a witness stayed after the shooting. While an audio recording can be admissible as a "record" under N.C.G.S. § 8C-1,

STATE v. WILSON

[197 N.C. App. 154 (2009)]

Rule 803(5), that rule applies where a witness is unable to remember the events but recalls making the entry when the fact was fresh in her memory. The witness here did not recall giving a statement to police; moreover, the witness's testimony raised questions about the accuracy of her statement.

**2. Evidence— recorded statement of witness—no distinction from deposition transcript**

There is no meaningful distinction between a deposition transcript and an audio recording for purposes of admissibility under N.C.G.S. § 8C-1, Rule 803(5). Defendant did not cite authority supporting his contention that the accuracy of a statement was manifest in its being a tape recording and that the witness tacitly adopted it.

**3. Appeal and Error— preservation of issues—basis for admission of evidence—not argued to trial court**

An argument that a statement should be admitted as a public record was not preserved for appeal where it was not argued as the basis for admission in the trial court.

**4. Evidence— impeachment—tape recorded statement of another witness—extrinsic**

The trial court did not err in a murder prosecution by refusing to admit a tape recorded statement as impeachment evidence where the statement was from the person with whom a witness to the shooting stayed after the crime.

**5. Criminal Law— instructions—self-defense—final mandate**

Defendant failed to preserve for appellate review his argument that the trial court erred by failing to include not guilty by reason of self-defense in its final mandate. Even if defendant's argument was properly before the Court, it is meritless as the trial court included an instruction on self-defense in its final mandate as well as instructions on first-degree murder, second-degree murder, voluntary manslaughter, and voluntary intoxication, as requested by defendant at the charge conference.

**6. Criminal Law— reinstruction of jury—self-defense not included**

There was no plain error in a murder prosecution where the court reinstructed the jury on first-degree and second-degree murder but did not reinstruct on self-defense. The jury only

requested a reinstruction on first-degree and second-degree murder, and the court confirmed that defendant had no objection to the instructions as given.

**7. Homicide— refusal to give voluntary manslaughter instruction—harmless error**

Any possible error in a murder prosecution from the trial court's denial of a request for an instruction on voluntary manslaughter based on provocation was harmless where the jury was properly instructed on first-degree and second-degree murder, and returned a verdict of guilty of first-degree murder.

**8. Criminal Law— instructions—duty to retreat not included—not plain error**

There was no plain error in a murder prosecution from the court's failure to instruct on the lack of a duty to retreat where defendant did not request the instruction and the issue was not a substantial feature of the defense.

Appeal by Defendant from judgment entered 12 October 2007 by Judge Catherine C. Eagles in Superior Court, Guilford County. Heard in the Court of Appeals 10 March 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Charlie E. Reece, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for Defendant-Appellant.*

McGEE, Judge.

David Reed Wilson (Defendant) was found guilty by a jury of the first-degree murder of Raimond Akira Johnson (Johnson) on 12 October 2007. The trial court sentenced Defendant to life imprisonment without parole. Defendant appeals.

The evidence presented at trial tended to show that Johnson was shot in front of his apartment in High Point at approximately 4:00 a.m. on 25 February 2006. Johnson died at a local hospital as a result of four gunshot wounds.

Officer P.J. Perryman (Officer Perryman) with the High Point Police Department testified to the following. When Officer Perryman arrived on the scene, Defendant was attempting to pull out of Johnson's driveway. Officer Perryman approached Defendant's ve-

hicle and saw an AR-15 assault rifle on the passenger seat. Officer Perryman placed Defendant in custody. Defendant made several statements to Officer Perryman, including "[t]hat guy took my wallet so I shot him" and that "he hated drug dealers and that he was out to rid the world of drug dealers." Defendant behaved as though the shooting "wasn't that big of a deal[,]" and was "pretty calm and relaxed" while in custody.

Officer J.A. Kuchler (Officer Kuchler) with the High Point Police Department testified that Defendant said one of his hobbies was "shooting dope dealers." Officer Kuchler testified that Defendant was calm. Defendant never told officers that Johnson had brandished a weapon, nor that he shot Johnson in self-defense. No weapon was recovered from Johnson or from his apartment.

Raymond Morgan (Morgan) testified to the following. Johnson sold drugs out of Johnson's apartment and Morgan was Johnson's "doorman." Morgan answered Johnson's front door when Johnson was in the back of the apartment. Defendant and another man came to Johnson's apartment to buy crack cocaine between 10:00 p.m. and 11:00 p.m. on 24 February 2006. Defendant and the man bought crack cocaine, smoked it in Johnson's apartment, and left. Defendant returned to the apartment alone four more times that night looking for his phone and wallet, and trying to buy more cocaine. The last time Defendant came to Johnson's apartment, Defendant was carrying an AR-15 assault rifle. Defendant wanted to buy a "dime rock," a ten-dollar piece of cocaine, but Johnson told Defendant he did not sell pieces of cocaine that small. Morgan asked Defendant if he had found his wallet and Defendant responded: "You ———— right I found it. If I didn't, I'd level this ——————." Defendant then put a round of ammunition in the chamber of the assault rifle.

Morgan, Johnson, and Defendant went outside Johnson's apartment. Defendant continued to demand a ten-dollar piece of cocaine but Johnson repeated he did not have a ten-dollar piece of cocaine and turned to walk away. Defendant shot Johnson twice and Johnson fell to the ground. Johnson stood up and Defendant shot him a third time, and Johnson again fell. Johnson stood up again and began to stagger toward his car. Defendant shot Johnson a fourth time. Morgan fled the scene. Morgan never saw Johnson with a gun, nor did he ever see Johnson make any threatening motion or gesture towards Defendant. Morgan testified Defendant killed Johnson "like a dog for no reason. He killed him in cold blood."

Morgan stayed with Tecolia Daughtridge (Daughtridge) the night of Johnson's shooting. Morgan told Daughtridge about the shooting but denied he had ever told Daughtridge anything inconsistent with his trial testimony. Two days after Johnson's shooting, Morgan gave a statement to police which was consistent with his trial testimony.

Defendant testified in his own defense, admitting that at the time of the shooting he was suffering from a drug and alcohol problem. Defendant admitted he bought drugs from Johnson on 24 February 2006 and that he later returned to Johnson's apartment to look for his wallet. Defendant said that when Johnson opened the door, Defendant could see his wallet on Johnson's kitchen table. Johnson claimed the wallet belonged to him and closed the door on Defendant. Defendant then armed himself with his AR-15 assault rifle, loaded the rifle, and put on his tactical vest with additional ammunition in order to "scare" and "intimidate" Johnson.

Defendant testified that when Johnson saw Defendant was armed, Johnson turned his back on Defendant and walked away. Defendant retrieved his wallet and walked back outside to his vehicle. Defendant got to his vehicle and heard Johnson say, "I'm going to kill your white ass." Defendant said Johnson walked toward him holding a pistol. Defendant saw Johnson raise his gun and Defendant "just started firing" at Johnson. Defendant admitted Johnson never fired any weapon at Defendant. Defendant did not recall ever telling police officers that Johnson had a gun or that Defendant had feared for his life.

Defendant also called Richard Smith (Smith), a neighbor of Johnson's, to testify. Smith testified that he bought drugs from Johnson and had seen a pistol inside Johnson's apartment. Smith testified that Morgan attempted to sell Smith a gun the morning after Johnson was shot and killed. Smith said Morgan never showed him the gun.

I.

[1] Defendant assigns error to the trial court's exclusion of a statement given to police by Daughtridge. Defendant contends Daughtridge's statement was admissible both substantively and to impeach Morgan and that the exclusion of this evidence violated Defendant's constitutional right to present a defense.

The relevant facts pertaining to this issue are as follows. Defendant called Daughtridge to testify. Daughtridge testified she had no

recollection of seeing Morgan on the night of the shooting, nor of any statements Morgan made to her regarding the shooting. She also testified that she had no recollection of having made a statement to the police. Daughtridge explained she has epileptic seizures and that she had been put in a coma. As a result, she could "hardly remember anything." Daughtridge testified she was not denying she made a statement to the police, but that she simply did not remember. Daughtridge said she was "liable to say anything" and was "a patient at mental health."

Outside the presence of the jury, Detective Terry Green (Detective Green) with the High Point Police Department testified to the following. Detective Green interviewed Daughtridge on the evening of 25 February 2006. Daughtridge gave a tape recorded statement to the police in which she stated the following: Morgan told her Defendant had fired a shot at Johnson outside Johnson's apartment; Johnson pulled out a gun in response but never shot the gun at Defendant or retaliated in any way; Johnson continued to walk toward Defendant while Defendant continued shooting at Johnson; Johnson's cousin "beat up" Morgan after the shooting; and Morgan was afraid for his life. Defendant cross-examined Morgan on each of these statements and Morgan denied making the statements to Daughtridge. After hearing all the evidence regarding the proposed admission of Daughtridge's tape recorded statement and arguments from counsel, the trial court excluded Daughtridge's tape recorded statement.

Defendant argues that Daughtridge's tape recorded statement was admissible for substantive purposes under N.C.R. Evid. 803(5) as a recorded recollection. We review *de novo* the trial court's determination of whether an out-of-court statement is admissible pursuant to N.C.R. Evid. Rule 803. *See State v. Hinnant*, 351 N.C. 277, 284, 523 S.E.2d 663, 667 (2000); *State v. Hazelwood*, 187 N.C. App. 94, 98-99, 652 S.E.2d 63, 66 (2007).

North Carolina Rule of Evidence 803(5) states:

A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly.

N.C. Gen. Stat. § 8C-1, Rule 803(5) (2007).

We have found no decisions by our Courts interpreting the language "memorandum or record" in N.C.R. Evid. 803(5) as encompassing a tape recorded statement. However, Kenneth S. Broun, the leading commentator on North Carolina evidence, states in *Brandis & Broun on North Carolina Evidence* § 224 at 201 (6th ed. 2004), regarding 803(5) evidence:

> Though most of the cases speak of a "writing," it seems that a tape or similar recording should equally qualify. Indeed, if the witness dictated the recording and testifies that she then knew her dictation to be accurate and identified her voice, the probability of trustworthiness is higher than in the situations [involving written recordings by a third.party].

We agree and hold that an audio recording can be admissible as a "record" under Rule 803(5).

Rule 803(5) "applies in an instance where a witness is unable to remember the events which were recorded, *but the witness recalls having made the entry at a time when the fact was fresh in her memory*[.]" *State v. Spinks*, 136 N.C. App. 153, 158-59, 523 S.E.2d 129, 133 (1999) (emphasis added) (citing *Brandis & Broun on North Carolina Evidence*, § 224, p. 110 (5th ed. 1998)).

In the case before us, Daughtridge testified that she did not recall giving a statement to police. Further, when Daughtridge was asked about whether she fabricated any statement made to the police, she responded:

> I didn't say I made anything up and you're not going to get me to say I made nothing up. My mental state and my physical health as far as my head, I'm liable to say anything. So, I'm not really—me sitting up here, *anything I say is not going to be credible because really my mental state, I'm liable to say anything.*
>
> . . . .
>
> I'm liable to say anything. Truthfully. I'm a patient at Mental Health. I'm liable to say anything.

(Emphasis added.)

Far from establishing the reliability of her statement to the police, Daughtridge's testimony raised questions about the accuracy of her statement because, due to her mental state, she was "liable to say anything." As a result, the audiotape was not admissible under Rule 803(5). *See Id.* (holding that statement was not admissible under

Rule 803(5) when witness did not testify that statement accurately reflected her actual knowledge at the time, but rather testified that she disagreed with some of the statement); *State v. Hollingsworth*, 78 N.C. App. 578, 581, 337 S.E.2d 674, 676-77 (1985) (holding that when witness testified that information in letter was lies, letter could not be admitted as past recollection recorded because no testimony was presented that letter correctly reflected witness' knowledge of events at time of letter).

**[2]** Nonetheless, Defendant contends that the fact the statement was a tape recording "manifested its accuracy" and meant Daughtridge "tacitly adopted it." However, Defendant cites no authority in support of his position. In *Superior Tile v. Rickey Office Equipment*, 70 N.C. App. 258, 263, 319 S.E.2d 311, 315 (1984), *disc. review denied*, 313 N.C. 336, 327 S.E.2d 899 (1985), our Court held that a deposition transcript was not admissible as a recorded past recollection because "the witness did not authenticate the deposition by saying it represented his recollection at the time it was made." We find no meaningful distinction between a deposition transcript and an audio recording for purposes of admissibility under Rule 803(5). Therefore, the trial court did not err in excluding Daughtridge's tape recorded statement as substantive evidence.

**[3]** Defendant also argues Daughtridge's statement was admissible for substantive purposes as a public record under N.C.R. Evid. 803(8)(B)&(C). However, the transcript shows that Defendant did not argue this basis for admission to the trial court. N.C.R. App. P. 10(b)(1) states that: "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." A defendant may not assert a different theory on appeal from the one presented to the trial court. *State v. Smarr*, 146 N.C. App. 44, 56, 551 S.E.2d 881, 888 (2001) (citing *State v. Benson*, 323 N.C. 318, 321-22, 372 S.E.2d 517, 519 (1988)), *disc. review denied*, 355 N.C. 291, 561 S.E.2d 500 (2002). Therefore, Defendant did not preserve this argument for appeal.

**[4]** Defendant further argues that Daughtridge's statement was admissible to impeach Morgan's testimony. N.C.R. Evid. 608(b) states: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility . . . may not be proved by extrinsic evidence. They may . . . be inquired into on cross-examination of the witness[.]" N.C. Gen. Stat. § 8C-1, Rule 608(b)

(2007). In *State v. Hunt,* our Supreme Court held that "extrinsic evidence of prior inconsistent statements may not be used to impeach a witness where the questions concern matters collateral to the issues." *State v. Hunt,* 324 N.C. 343, 348, 378 S.E.2d 754, 757 (1989) (citing *State v. Green,* 296 N.C. 183, 191, 250 S.E.2d 197, 203 (1978)) *reconsideration denied,* 339 N.C. 741, 457 S.E.2d 304 (1995). "[T]estimony contradicting a witness's denial that he made a prior statement when that testimony purports to reiterate the substance of the statement" is collateral. *Id.* (citing *State v. Williams,* 322 N.C. 452, 456, 368 S.E.2d 624, 626 (1988)). Therefore, "once a witness *denies* having made a prior inconsistent statement, [a party] may not introduce the prior statement in an attempt to discredit the witness; the prior statement concerns only a *collateral matter, i.e.,* whether the statement was ever made." *State v. Najewicz,* 112 N.C. App. 280, 289, 436 S.E.2d 132, 138 (1993), (citing *State v. Minter,* 111 N.C. App. 40, 48-49, 432 S.E.2d 146, 151, *cert. denied,* 335 N.C. 241, 439 S.E.2d 158 (1993)), *disc. review denied,* 335 N.C. 563, 441 S.E.2d 130 (1994).

In the present case, Defendant cross-examined Morgan regarding statements Morgan purportedly made to Daughtridge. Morgan admitted telling Daughtridge that a "white guy" had killed Johnson and that Morgan was afraid someone might hurt him. However, Morgan denied telling Daughtridge that Johnson had a gun on the day of the shooting or that Johnson's cousin had "beat him up." Defendant argues that he should have been allowed to impeach Morgan by introducing the substance of Daughtridge's tape recorded statement. Defendant contends that the statement was not extrinsic evidence because he was "offering Daughtridge's recorded recollection of an inconsistent statement by Morgan himself." However, pursuant to N.C.R. Evid. 608(b) and our Supreme Court's holdings in *Hunt* and *Najewicz,* Defendant was limited to Morgan's answers on cross-examination. Testimony of another witness, whether a recorded recollection or presently remembered by the witness is nonetheless extrinsic evidence. Therefore, the trial court did not err in excluding Daughtridge's tape recorded statement as impeachment evidence. Defendant's first assignment of error is overruled.

## II.

[5] Defendant argues in his assignment of error number seven that the trial court committed reversible error or, in the alternative, plain error. Defendant argues the trial court erred by failing to explain the law regarding self-defense in its supplemental instruc-

tions to the jury, and by failing to instruct the jury on voluntary manslaughter based on provocation.

We first note that in addition to arguing the trial court erred in its supplemental instructions to the jury, Defendant argues the trial court failed to include not guilty by reason of self-defense as a possible verdict in its *final mandate* to the jury. Defendant did not assign error to this basis and therefore Defendant's argument is not properly before us. N.C.R. App. P. 28(b)(6). Further, Defendant concedes, and the transcript clearly shows, that the trial court did include in its final mandate a self-defense instruction along with instructions on first-degree murder, second-degree murder, voluntary manslaughter, and voluntary intoxication as requested by Defendant at the charge conference. Therefore, even if Defendant's argument that the trial court erred in its final mandate was properly before us, this argument is without merit.

[6] During deliberations, the jury requested reinstruction on the elements of first-degree and second-degree murder. The trial court confirmed with Defendant that he had no objection to reinstructing the jury on first-degree and second-degree murder. After reinstructing the jury, the trial court confirmed that Defendant had no additions, corrections or objections to the reinstruction as given. Because Defendant failed to object to the reinstruction, Defendant is only entitled to plain error review of the trial court's reinstruction. N.C.R. App. P. 10(c)(4). In order to be plain error, the error must be *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (footnotes omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)).

In *State v. Southern*, our Court held that the trial court did not abuse its discretion by reinstructing the jury only on malice when the jury only requested additional instructions on malice. *State v. Southern*, 71 N.C. App. 563, 568, 322 S.E.2d 617, 620-21 (1984), *aff'd per curiam*, 314 N.C. 110, 331 S.E.2d 688 (1985). Our Court reasoned that because the jury only requested additional instructions on malice, "giving additional instructions on self-defense might unduly influence" the jury. *Id.*

The present case is directly analogous to *Southern*. The jury in the present case only requested a reinstruction on first-degree and

second-degree murder. As in *Southern,* the trial court's decision not to reinstruct on self-defense was not an abuse of discretion, and therefore clearly did not amount to plain error. *Id.*

[7] Defendant also argues the trial court erred by failing to instruct the jury on voluntary manslaughter based on provocation. "[W]hen a jury is properly instructed on both first-degree and second-degree murder and returns a verdict of guilty of first-degree murder, the failure to instruct on voluntary manslaughter is harmless error." *State v. East,* 345 N.C. 535, 553, 481 S.E.2d 652, 664, *cert. denied,* 522 U.S. 918, 139 L. Ed. 2d 236 (1997). Our Supreme Court has reasoned that where "the jury . . . did not find that [the] defendant was in the grip of sufficient passion to reduce the murder from first-degree to second-degree, then ipso facto it would not have found sufficient passion to find the defendant guilty only of voluntary manslaughter." *State v. Tidwell,* 323 N.C. 668, 675, 374 S.E.2d 577, 581 (1989).

In this case, Defendant has not alleged that the trial court improperly instructed the jury on first-degree and second-degree murder. Because the jury was properly instructed on first-degree and second-degree murder and returned a verdict of guilty of first-degree murder, any possible error from the trial court's denial of Defendant's request for an instruction on voluntary manslaughter based on provocation was harmless. Therefore, Defendant's assignment of error number seven is overruled.

### III.

[8] Defendant argues the trial court committed plain error by failing to instruct the jury that Defendant had no duty to retreat when Johnson confronted Defendant with murderous intent. Because Defendant failed to specifically request this instruction at trial and did not object to the trial court's failure to instruct the jury on duty to retreat, our Court reviews for plain error. N.C.R. App. P. 10(c)(4).

"A comprehensive self-defense instruction requires instructions that a defendant is under no duty to retreat if the facts warrant it, and it is error for the trial court not to give this instruction *if it is requested.*" *State v. Davis,* 177 N.C. App. 98, 102, 627 S.E.2d 474, 477 (2006) (emphasis added) (citing *State v. Everett,* 163 N.C. App. 95, 100, 592 S.E.2d 582, 586 (2004)). However, "[w]here a defendant's right to stand his ground and shoot an assailant in self-defense is a '*substantial feature*' of a defense, it is error for the trial court to fail to give the instruction, 'even in the absence of a special request there-

for.' " *Id.* at 103, 627 S.E.2d at 478 (emphasis added) (quoting *State v. Ward*, 26 N.C. App. 159, 162, 215 S.E.2d 394, 396 (1975)).

Since Defendant in this case did not request the instruction that he had no duty to retreat, the relevant question is whether Defendant's right to stand his ground was a "substantial feature" of his defense. *Id.* While Defendant argues the evidence *supported* an instruction that he had no duty to retreat, Defendant fails to argue, nor does the evidence show, that he made the issue of his duty to retreat a *substantial feature* of his defense. Further, the State made no suggestion that Defendant should have retreated nor does Defendant contend the State put his duty to retreat at issue in the case. Because the question of whether or not Defendant had any duty to retreat was not a substantial feature of his defense, the trial court did not err in failing to instruct the jury that Defendant had no duty to retreat.

Defendant did not argue his remaining assignments of error and therefore they are abandoned pursuant to N.C.R. App. P. 28(b)(6).

No error.

Judges GEER and BEASLEY concur.