STATE OF NORTH CAROLINA v. DOUGLAS MITCHELL, Defendant

No. COA04-284

(Filed 5 April 2005)

**Evidence— witnesses' denial of prior statements—impeachment—extrinsic evidence**

The trial court erred in a first-degree statutory sex offense, indecent liberties, sexual activity by a substitute parent, felony child abuse, and first-degree statutory rape case by permitting the State to impeach three witnesses who denied making prior allegations about defendant's prior sexual abuse of his own children when they were younger with extrinsic evidence, because: (1) once a witness denies having made a prior inconsistent statement, the State may not introduce the prior statement in an attempt to discredit the witness since the prior statement concerns only the collateral matter of whether the statement was ever made; (2) their denials were conclusive for impeachment purposes, and the testimony elicited from a detective and a DSS case manager during the State's rebuttal case was collateral and therefore could not be used to impeach those witnesses; (3) the pertinent statements regarding defendant's prior sexual misconduct were inadmissible to show defendant's intent, motive or plan to commit the crimes since they were hearsay statements; and (4) the evidence that defendant sexually assaulted his own daughters when they were young was highly prejudicial and there was a reasonable probability that without this evidence, the outcome of the trial may have been different.

Appeal by defendant from judgment entered 25 September 2003 by Judge W. Allen Cobb, Jr. in Wayne County Superior Court. Heard in the Court of Appeals 6 December 2004.

*Attorney General Roy Cooper, by Assistant Attorney General R. Kirk Randleman, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant was indicted upon twelve counts of various sexual offenses upon his minor granddaughters, S.S.M. and T.M., occurring at various times from 1997 until 2002. He appeals from judgment imposing active terms of imprisonment entered upon his conviction by a jury of two counts of first-degree statutory sex offense, two counts of indecent liberties, one count of sexual activity by a substitute parent, one count of felony child abuse and one count of first-degree statutory rape.

The evidence at trial tended to show that defendant is a sixty-five-year-old man, who is the father of five children. In 1997, defendant and his wife, Brenda, obtained custody of two of his son Michael's children, T.M. and her brother. S.S.M., Michael's oldest child, lived with her mother but occasionally visited defendant and Brenda in Goldsboro.

S.S.M. testified that in July 1998, she went riding with defendant on a four-wheeler. During the ride, he talked to her about sexual matters and stopped the four-wheeler, rubbed her leg and put his hand up her shorts, penetrating her vagina with his finger. In March 1999, S.S.M. told her mother that defendant had touched her inappropriately the previous summer. Neither S.S.M. nor her mother reported the incident to the authorities until after her sister, T.M., made similar allegations in 2002, but S.S.M. refused to stay with her grandparents after the incident.

T.M., who was born in 1992, testified that when she was four or five years old, she fell asleep in her grandfather's bed watching television and when she woke up, he was licking her ear and his "private" was sticking out of his pants. She described other incidents which included riding on the four-wheeler with defendant, when he stopped and exposed his "private" and asked her to "suck it like a lollipop;"

**STATE v. MITCHELL**

[169 N.C. App. 417 (2005)]

that he made her "go up and down on his private" with her hand; that he had licked her breasts and tried to lick her "private;" and that he had, on multiple occasions, tried "to stick his private inside" her.

On 17 March 2002, after hearing her grandmother complain about S.S.M.'s accusations that her grandfather had sexually abused her, T.M. told her grandmother what her grandfather had done to her. After T.M. accused defendant, she moved to her aunt's home and then later moved to her father's home. Eventually, she moved to her mother's home in South Carolina.

Defendant's son, Michael Mitchell (Michael), was called as a defense witness. Michael was asked on direct examination if he had made a comment to Steven Potter (Potter), a case manager with the Wayne County Department of Social Services, about defendant's inappropriate behavior with his sister, Cathy. Michael responded that he understood he "was supposed to have said something when [he] was drunk, but [he] [didn't] remember saying nothing like that, so you'd have to ask Cathy and Tina that." On cross-examination, the prosecutor asked Michael if he had stated to Potter that he once observed his father on top of his sister, Cathy. Michael responded that he never said that to Potter.

Defendant's daughter, Cathy Beasley (Beasley), was also called as a witness for the defense. On direct examination, Beasley testified that defendant had never "improperly, physically or emotionally or sexually," abused her. The prosecutor asked Beasley, on cross-examination, if she had told Tammy Odom (Odom), a detective sergeant at the Wayne County Sheriff's office, that her "father had done something sexual to both [her] and [her] sister Phyllis and that [they] had gotten over it and these two young ladies need to do the same." Beasley denied ever telling Odom this information.

Defendant's youngest daughter, Kelly Belt (Kelly), a witness for the defense, was not questioned on direct examination about her conversation with Potter or about her half-sisters, Cathy and Phyllis. On cross-examination, however, in response to a question from the prosecutor, Kelly testified, "[my father] had told me that there had been inappropriate behavior, but he never elaborated. My sisters, I point-blank asked my sister and she said nothing ever happened." The prosecutor then asked Kelly if she had made the following two statements to Potter during his investigation: "[my] two older sisters, Cathy and Phyllis, have told [me] that incidents did occur to them," and "[my] father may have had a problem when he was younger and

now no longer has one." In each case, Kelly denied making the statements to Potter.

During the State's rebuttal evidence, the prosecutor called Odom to testify about her conversation with Beasley. The trial court, over defendant's objection, allowed Odom to testify as follows:

[Beasley] said that she and her sister both had been sexually assaulted as a child by [defendant]. . . . She and her sister had got along well in life. They had gotten over it. They had put the past behind them and she suggested that the two children do the same thing also.

The State then called Potter and inquired about his conversation with Michael. Potter replied that Michael told him that "he had seen his father on top of his sister and that his father had made him leave the room." The prosecutor then asked Potter about his conversation with Kelly. He testified that Kelly had told him:

she had spoken to her oldest sisters . . . and . . . something had occurred between them and their father of a sexual nature, but that she had not asked for specifics, and did not want to know specifics, and that she had hoped that he might have had a problem when he was younger but that he did not now.

Defendant testified on his own behalf that he did not sexually abuse either of the girls in any way.

---

The dispositive issue, raised by defendant's thirteenth and twenty-fifth assignments of error, is whether the trial court erred by permitting the State to impeach Michael Mitchell, Cathy Beasley and Kelly Belt by extrinsic evidence. Defendant contends the testimony of Detective Odom and Steven Potter, which was offered to impeach the three witnesses' denials they had made the statements about which they had been cross-examined, was inadmissible and prejudicial. It is well established that a witness's character or propensity for telling the truth is subject to impeachment through cross-examination about prior inconsistent statements; however, the answers of the witness are conclusive and may not be contradicted by extrinsic evidence. *State v. Shane*, 304 N.C. 643, 652-53, 285 S.E.2d 813, 819 (1981), *cert. denied*, 465 U.S. 1104, 80 L. Ed. 2d 134, 104 S. Ct. 1604 (1984).

The State argues that extrinsic evidence is admissible if the evidence is not collateral, and contends that in this case, the rebuttal testimony was properly admitted because the evidence was material,

**STATE v. MITCHELL**

[169 N.C. App. 417 (2005)]

not collateral. We disagree. " '[C]ollateral matters' are those which are irrelevant to the issues in the case; they involve immaterial matters and irrelevant facts inquired about to test observation and memory." *State v. Najewicz*, 112 N.C. App. 280, 289, 436 S.E.2d 132, 138 (1993), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 130 (1994). In *State v. Hunt*, 324 N.C. 343, 348, 378 S.E.2d 754, 757 (1989), *reconsideration denied*, 339 N.C. 741, 457 S.E.2d 304 (1995), the Supreme Court stated that "testimony contradicting a witness's denial that he made a prior statement when that testimony purports to reiterate the substance of the statement" is collateral. Therefore, "once a witness *denies* having made a prior inconsistent statement, the State may not introduce the prior statement in an attempt to discredit the witness; the prior statement concerns only a *collateral matter*, *i.e.*, whether the statement was ever made." *Najewicz*, 112 N.C. App. at 289, 436 S.E.2d at 138.

In each of the above referenced instances, the witness denied having made the prior statement inquired about during his or her own testimony. Their denials were conclusive for impeachment purposes; the testimony elicited from Detective Odom and Mr. Potter during the State's rebuttal case was collateral and therefore, could not be used to impeach these witnesses.

In addition, the testimony of Odom and Potter in these instances was inadmissible for substantive purposes because the statements were hearsay that were not admissible under any of the hearsay exceptions. The State argues that although evidence of prior acts is generally not admissible, evidence of prior acts of sexual misconduct may be admissible to show defendant's intent, motive or plan to commit the crime charged. *State v. Boyd*, 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988); N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003). However, in the first situation, the testimony in dispute is not Cathy's testimony about her father's alleged sexual abuse, but Odom's testimony about conversations she had with Cathy. In the second and third situations, the testimony in question is Potter's testimony regarding conversations with Michael and Kelly about their father's alleged sexual abuse of Cathy and Phyllis. Cathy, during her own testimony, repeatedly denied under oath that her father had sexually abused her. These statements regarding defendant's prior sexual misconduct are therefore inadmissible to show defendant's intent, motive or plan to commit the crime because they are hearsay statements.

The State also argues that if the admission of Odom's statement was error, it was not prejudicial, and therefore, defendant is not enti-

tled to a new trial. Again, we disagree. N.C. Gen. Stat. § 15A-1443(a) (2003) provides that prejudicial error exists where "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." During Odom's testimony, evidence was admitted, over defendant's objection and without any limiting instruction, that defendant sexually assaulted his own daughters when they were young. This evidence was highly prejudicial and there is a reasonable probability that without this evidence, the outcome of the trial may have been different.

Defendant did not object to Potter's rebuttal testimony regarding the statements made to him by Michael and Kelly; he contends the trial court committed plain error in admitting Potter's rebuttal testimony. "Under a plain error analysis, defendant is entitled to a new trial only if the error was so fundamental that, absent the error, the jury probably would have reached a different result." *State v. Jones*, 355 N.C. 117, 125, 558 S.E.2d 97, 103 (2002). The evidence at trial was contested and inconsistencies existed between the testimony of T.M. and Kelly. The admission of Potter's testimony, in conjunction with Odom's testimony, was so highly prejudicial as to have had a probable impact in the jury's verdict. Therefore, we hold that defendant is entitled to a new trial.

In light of our decision that the error entitles defendant to a new trial, we deem it unnecessary to address defendant's remaining arguments since they are not likely to occur in a new trial. Defendant's remaining assignments of error were not brought forward in his brief and are, therefore, deemed abandoned. N.C. R. App. P. 28(a).

New trial.

Judges CALABRIA and GEER concur.