STATE OF NORTH CAROLINA v. JOHN TROSPER BRADLEY

No. COA05-1167
No. COA05-1312

(Filed 19 September 2006)

**1. Appeal and Error— right to appeal—aggrieved party**

The trial court did not err in a double indecent liberties with a child and statutory sex offense case by denying defendant's motion to dismiss Duke University Health Systems' (DUHS)

appeal, because: (1) DUHS is an aggrieved party and is asserting its legal rights which have been directly affected by the trial court's order; and (2) the trial court's order effectively requires DUHS to disclose information concerning a research subject's privacy which it is obligated, under the Certificate of Confidentiality and federal statutes, to protect.

## 2. Discovery— privileged communications—sealed documents—in camera inspection

Although the trial court did not err in a double indecent liberties with a child and statutory sex offense case by refusing to conduct an in camera inspection of sealed documents that defendant wanted to use to impeach the credibility of a witness by showing she made statements in project records that were at odds with her trial testimony or failed to make statements which would have shown abuse at the hands of defendant, the trial court erred by ordering their production to defense counsel in its order of 3 May 2005 and the order is vacated, because: (1) defendant was not entitled to production or in camera review of the documents when defendant failed to satisfy the threshold requirement of materiality; (2) although a witness may be impeached on cross-examination regarding her prior inconsistent statements, her answers are deemed conclusive and may not be attacked with direct evidence; and (3) the witness was only one of three N.C.G.S. § 8C-1, Rule 404(b) witnesses who provided 404(b) testimony, she was subject to cross-examination, and considered in that context, the contents of the records are at best tangential to the aggregate case and cannot meet even the relatively permissive *Phillips* criteria for materiality let alone the more stringent Tirado test.

## 3. Sexual Offenses— statutory sex offense—sufficiency of short-form indictment

The trial court did not err by concluding it had jurisdiction to try defendant even though it used a short-form indictment for the charge of statutory sex offense where the victim is either 13, 14, or 15 years old, because: (1) the Court of Appeals has specifically held that N.C.G.S. § 15-144.2(a) permits a short-form indictment for sexual offenses committed against persons 13, 14, or 15 years old; and (2) the indictment complied with the requirements of N.C.G.S. § 15-144.2(a) and was sufficient to put defendant on notice of the crime of which he was accused.

**4. Evidence— prior crimes or bad acts—testimony about prior abuse—modus operandi—plan—absence of mistake—absence of accident**

The trial court did not err in a double indecent liberties with a child and statutory sex offense case by admitting the testimony of three victims regarding prior acts of abuse by defendant, because: (1) our Supreme Court has been liberal in allowing evidence of similar offenses in trials on sexual crime charges; (2) all three of the witnesses were young female relatives who were in the care of defendant at the time of the alleged abuse and each testified to similar acts by defendant in similar locations followed by defendant's instruction to keep the encounters a secret; and (3) the trial court instructed the jury that the testimony was received solely for the purpose of showing that there existed in the mind of defendant a plan, scheme or system, or design involving the crimes charged in the case, or absence of mistake and absence of accident.

Appeal by defendant from judgment entered 20 August 2004 by Judge James L. Baker in Buncombe County Superior Court and appeal by Duke University Health Systems, Inc. from order entered 3 May 2005 by Judge James U. Downs in Buncombe County Superior Court. Heard in the Court of Appeals 15 August 2006.

*Roy A. Cooper, III, Attorney General, by Elizabeth L. Oxley, Assistant Attorney General, for the State.*

*Moore & Van Allen PLLC, by William E. Freeman and Michael J. Byrne, for appellant Duke University Health Systems.*

*Robert W. Ewing for defendant-appellant.*

MARTIN, Chief Judge.

Defendant was charged with two counts of indecent liberties with a child, F.A., in violation of N.C.G.S. § 14-202.1 and one count of statutory sex offense in violation of N.C.G.S. § 14-27.7A. Defendant entered pleas of not guilty.

Prior to trial, defendant's trial counsel issued a subpoena to Duke University Health Systems ("DUHS") seeking "any and all documents from the Great Smoky Mountain Study recording, reflecting or referencing any statement by [M.B.] . . . mentioning or describing any abuse of her." DUHS moved for a protective order, contending that

the 29 July order was contrary to the "Certificate of Confidentiality" issued to researchers pursuant to federal law. Defendant asserted that M.B. was expected to be called by the State to offer evidence pursuant to N.C.G.S. 8C-1, Rule 404(b) that defendant had sexually abused her in the past and that the information contained in the records was necessary for impeachment purposes. On 18 August 2004, the trial court vacated its 29 July 2004 order, granted DUHS's motion for a protective order, and required DUHS to "maintain a sealed copy of the records referred to in the Court's July 29, 2004 Order until the final adjudication of all issues in this case, including any appeals or until further order of this court."

At defendant's trial, the evidence tended to show that F.A. first met defendant when she was eight or nine years old. F.A. is the niece of defendant's daughter-in-law, Laura Bradley. In August 2003, F.A. went with Laura Bradley to prepare for a surprise party for defendant's wife. F.A. testified that she enjoyed going to defendant's house and that they treated her "like family." During the party preparations, defendant and F.A. went to the grocery store to purchase additional food. F.A. testified that on the way to the store defendant touched her "on the outside of my clothes on my privates" and "put his hand inside my panties on my vagina . . . . He put his finger inside. Not all the way, but a little bit." He also touched her breasts and on her "butt" under her clothes. She further testified that defendant told her that it was their secret and "not to tell anyone." She eventually told her school counselor and then talked to her grandparents, and police. These witnesses corroborated her testimony.

The State also offered the testimony of K.C., F.C., and M.B. with respect to incidents in which defendant had allegedly committed similar acts upon them. Thirteen-year-old K.C. testified that defendant is her mother's stepfather, that when she was five or six, "once or twice" he had put his hand in her underwear and touched her "butt," and on another occasion, he "rubbed [her] butt" for "[a] couple of minutes." Once, when tying her shoe, "he bent down to pick up my foot and he stuck it on his private part"; when she moved her foot, he "moved it back" and told her "not to tell, that it was our secret." When defendant's granddaughter, Melinda Bradley, was discussing F.A.'s accusations with K.C. and other family members, K.C. told Melinda what defendant had done to her. According to K.C.'s testimony, Melinda responded by telling her "not to tell or else we could get [defendant] in a lot of trouble." The next day, K.C.'s mother told her about F.A.'s accusations, and her mother asked K.C. if defendant "had done

anything to me, and I told her, "Yeah." K.C. later made a statement to police.

F.C. testified that K.C. is her daughter, and corroborated K.C.'s statements. She also testified that defendant is her stepfather, who cared for her after her mother died, from age six until sixteen, when she left home to marry her husband. She testified that she remembered defendant sitting her in his lap and touching her vagina while he was driving his truck. She also recalled that when she was ten or eleven, defendant carried her from her bed on nights when her stepmother was out of town and touched her with his hands.

M.B., who is Melinda Bradley's sister, testified that defendant is her grandfather. M.B., her sisters, and their mother lived with defendant "[f]or the most part as I was growing up," except for a period when she was younger than ten years old. At that time, M.B. told her mother that defendant "was fondling my breasts," and the Department of Social Services "said it was best" that they not live with him. M.B. further testified that her mother did not believe her allegations, and, after a couple of years, they moved back in with her grandfather. Once they returned to defendant's house, defendant had M.B. perform oral sex on him and took her on car rides where "he would fondle my breasts and put his hand on my vagina." He also once pulled down both her pants and his pants and "put his part between my legs." As she got older, the abuse lessened.

Defendant testified on his own behalf and denied all of the allegations, as did other family members and neighbors, who attested to defendant's law-abiding nature and general good character. These witnesses also expressed their doubts about the credibility of the State's witnesses. Melinda Bradley testified that her grandfather was truthful and law-abiding, and she denied any conversation with K.C. about defendant.

The jury convicted defendant of two counts of taking indecent liberties with a child, and one count of statutory sexual offense against a victim who was 13 years old at the time of the offense. Defendant was sentenced to 240 months to 297 months for the sexual offense charge and two consecutive sentences of 16 months to 20 months for the indecent liberties charges. Defendant appealed.

Defendant's appellate counsel moved that the documents maintained by DUHS pursuant to the trial court's 29 July 2004 order, relating to any statements made by M.B. and sealed pursuant to the court's

order, be made available "to ensure a full and fair appellate review." By order dated 3 May 2005, the trial court ordered DUHS to produce the records for defendant's appellate counsel for the purpose of determining whether any error should be assigned premised on their contents. Dissemination of the contents of the documents to anyone other than counsel for the parties was prohibited. DUHS appealed from the order requiring disclosure.

---

**[1]** Defendant Bradley has moved to dismiss DUHS's appeal, arguing that DUHS has no right to appeal in this matter. We deny the motion to dismiss. N.C.G.S. § 1-271 permits "aggrieved parties to appeal." "A 'party aggrieved' is one whose legal rights have been denied or directly and injuriously affected by the action of the trial court." *Selective Ins. Co. v. Mid-Carolina Insulation Co.*, 126 N.C. App. 217, 219, 484 S.E.2d 443, 445 (1997). Furthermore, Section 1-277 of our General Statutes permits appeal "from every judicial order or determination of a judge of a superior or district court, upon or involving a matter of law or legal inference, whether made in or out of session, which affects a substantial right claimed in any action or proceeding." N.C. Gen. Stat. § 1-277 (2005). Our Supreme Court has determined that requiring disclosure of "the very documents" allegedly "protected from disclosure by . . . statutory privilege" affects a substantial right. *Sharpe v. Worland*, 351 N.C. 159, 164, 522 S.E.2d 577, 580 (1999), *disc. review denied*, 352 N.C. 150, 544 S.E.2d 228 (2000).

We hold that DUHS is a party aggrieved and is asserting its legal rights, which have been directly affected by the trial court's order. The trial court's order effectively requires DUHS to disclose information concerning the research subject's privacy which it is obliged, pursuant to the Certificate of Confidentiality and federal statutes, to protect.

**[2]** We turn now to the substance of DUHS's appeal. DUHS argues that the trial court erred when it granted defendant's motion for review of the sealed documents because the confidentiality of these documents is protected by federal statute and the trial court's order violates the statute. Defendant contends the trial court was required, at the very least, to review the records *in camera* to determine if there was exculpatory evidence contained therein, as required by *Pennsylvania v. Ritchie*, 480 U.S. 39, 94 L. Ed. 2d 40 (1987). However, "just because defendant asks for an in camera inspection does not automatically entitle him to one. Defendant still must demonstrate that the evidence sought to be disclosed might be material and fa-

vorable to his defense." *State v. Thompson,* 139 N.C. App. 299, 307, 533 S.E.2d 834, 840 (2000) (citation omitted). A trial court is required to conduct an *in camera* inspection only if a possibility exists that the evidence might be material to guilt or punishment, or be otherwise favorable to the defense. *State v. Phillips,* 328 N.C. 1, 18, 399 S.E.2d 293, 301, *cert. denied,* 501 U.S. 1208 (1991). The defendant has the burden of proving materiality. *State v. Tirado,* 358 N.C. 551, 589-90, 599 S.E.2d 515, 541 (2004) (citing *State v. Alston,* 307 N.C. 321, 337, 298 S.E.2d 631, 642 (1983)). Since defendant has failed to satisfy the threshold requirement of materiality, we hold he was not entitled to production or *in camera* review of the documents and we need not consider DUHS's argument that the confidentiality of the documents was statutorily privileged.

In *Tirado, supra,* our Supreme Court cited the holding of the United States Supreme Court in *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3384, 87 L. Ed. 2d 481, 494 (1985) that evidence is material only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

In the present case, defendant represented to the trial court, and has represented to this Court in his appellate brief, that he intended to use the DUHS records to impeach the credibility of M.B., one of the 404(b) witnesses, by showing that she made statements, contained in the Great Smoky Mountain Study project records, at odds with her testimony at trial, or failed to make statements to them which would have shown abuse at the hands of defendant. However, defendant did not cross-examine M.B. about whether she made prior statements inconsistent with her testimony at trial. Even if he had done so, and M.B. had offered an account that deviated from her prior statements as reflected in the DUHS records, counsel would not have been able to offer the records for the purposes of impeachment.

> [E]xtrinsic evidence of prior inconsistent statements may not be used to impeach a witness where the questions concern matters collateral to the issues. *Citation omitted.* Such collateral matters have been held to include testimony contradicting a witness's denial that he made a prior statement when that testimony purports to reiterate the substance of the statement.

*State v. Hunt,* 324 N.C. 343, 348, 378 S.E.2d 754, 757 (1989), *reconsideration denied,* 339 N.C. 741, 457 S.E.2d 304 (1995); *see*

*State v. Mitchell,* 169 N.C. App. 417, 421, 610 S.E.2d 260, 263 (2005). Furthermore, though a witness may be impeached on cross-examination regarding her prior inconsistent statements, her answers are deemed conclusive and may not be attacked with direct evidence. *Mitchell,* 169 N.C. at 420, 610 S.E.2d at 263 (quoting *State v. Shane,* 304 N.C. 643, 652-53, 285 S.E.2d 813, 819 (1981), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1604, 80 L. Ed. 2d 134 (1984)).

Moreover, M.B. was only one of three 404(b) witnesses who provided Rule 404(b) testimony. She was subject to cross-examination. Considered in that context, the contents of the DUHS records are at best tangential to the aggregate case and cannot meet even the relatively permissive *Phillips* criteria for materiality, let alone the more stringent *Tirado* test. Since the records are not material to the outcome of the case, we hold there was no error in the trial court's refusal to inspect them *in camera,* but that the trial court erred in ordering their production to defendant's counsel in its order of 3 May 2005 and the order is vacated.

**[3]** Defendant next contends in his appeal that the trial court lacked jurisdiction to try him because the statutes do not permit a short form indictment for statutory sex offense where the alleged victim is either 13, 14, or 15 years old. We disagree.

Defendant was indicted under section 14-27.7A(a) of our General Statutes, which states that a "defendant is guilty of a Class B1 felony if the defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person, except when the defendant is lawfully married to the person." N.C. Gen. Stat. § 14-27.7A(a) (2005). It is not required in this State that the indictments for sex offenses allege every matter required to be proved at trial, provided the indictment contains the name of the accused, the county where the alleged offense occurred, and a description of the offense. "[I]t is sufficient in describing a sex offense to allege that the accused person unlawfully, willfully, and feloniously did engage in a sex offense with the victim, naming the victim, by force and against the will of such victim and concluding as is now required by law." N.C. Gen. Stat. § 15-144.2(a) (2005).

A bill of indictment "shall be good and sufficient in law as an indictment for a first degree sex offense and will support a verdict of guilty of a sex offense in the first degree . . . an attempt to commit a sex offense or an assault" as long as it contains these averments.

*State v. Daniels*, 164 N.C. App. 558, 564-65, 596 S.E.2d 256, 260, *disc. review denied*, 359 N.C. 71, 604 S.E.2d 918 (2004). We have specifically held that the statute permits a short-form indictment for sexual offenses committed against persons 13, 14, or 15 years old. *Id.*

In the present case, the indictment alleged:

The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did engage in a sexual act with [the victim], a person of the age of 13 years. At the time of the offense, the defendant was at least six years older than the victim, and was not lawfully married to the victim.

This indictment complied with the requirements of N.C. Gen. Stat. § 15-144.2(a) and was sufficient to put the defendant on notice of the crime of which he was accused. *State v. McGriff*, 151 N.C. App. 631, 634, 566 S.E.2d 776, 778 (2002). Therefore, this argument has no merit.

**[4]** Finally, defendant argues that the trial court improperly admitted the testimony of K.C., F.C., and M.B. regarding prior acts of abuse by defendant. Defendant argues that the testimony was inadmissible because it lacked sufficient similarity in *modus operandi* and sufficient temporal proximity to be relevant.

Rule 404(b) provides in relevant part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005). Our Supreme Court has held that this rule "is a clear general rule of *inclusion* of relevant evidence . . . subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Golphin*, 352 N.C. 364, 443, 533 S.E.2d 168, 221 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001) (emphasis in original) (citation omitted). Furthermore, our Supreme Court "has been liberal in allowing evidence of similar offenses in trials on sex-

ual crime charges." *State v. Frazier,* 344 N.C. 611, 615, 476 S.E.2d 297, 300 (1996) (testimony by several female family members of abuse by the defendant over a period of years not considered too remote, where abuse was "strikingly" similar). If the incidents described in Rule 404(b) testimony are "sufficiently similar and not too remote" the evidence is admissible. *State v. Thaggard,* 168 N.C. App. 263, 271, 608 S.E.2d 774, 780 (2005) (citation omitted); *see also State v. Johnson,* 145 N.C. App. 51, 58-59, 549 S.E.2d 574, 579-80 (2001) (evidence was sufficiently similar where the defendant was teacher or coach of victims and sexual intercourse in all instances occurred at least once at school); *cf., State v. White,* 135 N.C. App. 349, 353, 520 S.E.2d 70, 72-73 (armed rape and cunnilingus on young females not sufficiently similar); *State v. Scott,* 318 N.C. 237, 248, 347 S.E.2d 414, 420 (1986) (thirteen-year-old defendant's armed sexual assault of a sixteen-year-old not sufficiently similar to allegations, eight years later, of cunnilingus on a four-year-old).

Here, all three of the 404(b) witnesses were young female relatives who were in the care of defendant at the time of the alleged abuse. Each testified to similar acts by defendant in similar locations, followed by defendant's instruction to keep the encounters a secret. The trial court properly instructed the jury that this testimony was "received solely for the purpose of showing that there existed in the mind of the defendant a plan, scheme or system or design involving the crime charged in this case, or the absence of mistake and absence of accident" and that if they found the testimony credible, they could consider it "only for the limited purpose for which it was received." Given the similarity between the ages of the victims at the time of the acts, their placement with the defendant because of familial or quasi-familial relationships, the defendant's purported *modus operandi* in each instance, and the warning he allegedly gave each victim, we conclude the evidence was properly admitted pursuant to Rule 404(b).

05-1312—No error in defendant's trial.

05-1167—Order vacated.

Judges McCULLOUGH and BRYANT concur.